JOHN BROWN & another *vs.* SAMUEL R. PUTNAM & others.

The defendants agreed with the plaintiffs, the owners of a vessel, to furnish funds to fill eleven twelfths of the vessel, on a joint adventure : The funds did not suffice to fill eleven twelfths of the tonnage, and the master obtained goods on freight, from the consignee, to fill the deficiency, and the freight was received by the defendants. *Held,* that the plaintiffs were entitled to the freight, but that, as the amount thereof was greater than would have been earned at the current rate, and was allowed by the consignee, at such high rate, instead of a return commission, which he would have allowed, and which, by the agreement between the plaintiffs and defendants, would have enured to the defendants' benefit, they were entitled to deduct, from the freight received by them, the amount of such commission.

ASSUMPSIT to recover the amount of freight earned by the plaintiffs' vessel, on a voyage from Rio de Janeiro to Antwerp, under the agreement and on the facts hereinafter set forth.

On the 23d of October, 1833, the parties made this agreement : " It is hereby agreed between William J. Loring on the part of himself and Capt. John Brown, owners of brig Barbara, on the one part, and S. R. Putnam, of the house of Alfred Barrow, Putnam & Co. of Antwerp, on the other part, as follows, viz. That said brig shall proceed from this country to Rio de Janeiro, and there take on board a cargo of sugar, or coffee,

or hides, or an assorted cargo of either two or all three of those articles, and proceed with the same for Antwerp. The cargo is to be provided by the parties above named in the following proportions, and at the rates of freight thereto annexed, viz. One twelfth of said cargo to be provided by the owners of said brig, free of freight. One fourth of said cargo to be provided by the said Putnam, who is to pay freight on delivery of the same at Antwerp, at the rate of four pounds ten shillings sterling per ton of 2240 nett English pounds of sugar, or 2000 do. of coffee, or 1700 do. of hides, with five per cent. primage. One third of said cargo to be provided by the said Putnam on freight, if earned up to four pounds ten shillings, with five per cent. primage — that is, in lieu of a specific freight on this one third of the cargo, there shall be paid whatever nett profit may arise on the sale of the same at Antwerp, until such nett profits may amount to four pounds ten shillings per ton as above mentioned ; any profit beyond this to belong to the said Putnam. And in estimating the profits on this one third of the cargo, it is agreed that whatever balance of nett proceeds may remain from the sale of the same at Antwerp, after deducting the remittances required to cover the bills drawn on London for the cost of the same, together with one per cent. banker's commission, and the usual remitting charges, and also interest and insurance, shall be considered the nett profits on this one third of the cargo to be paid to the owners of the vessel in lieu of specific freight, until the said profits may amount to four pounds ten shillings per ton, as above mentioned, with five per cent. primage.

" One third of said cargo to be provided by the said Putnam on half profits in lieu of specific freight ; that is, there shall be paid, in lieu of freight on the same, one half the nett profits which may arise on the sale of the same at Antwerp ; and the profits are to be estimated in the same manner as the above, except that interest and insurance are not to be deducted ; and whatever balance may remain of the nett proceeds, after deducting the remittances to cover the costs in London, together with banker's commissions and the usual remitting charges, shall be considered the nett profits on this one third of the cargo — half

of which is to be paid to the owners of the vessel in lieu of freight on the same.

" It is agreed that the owners of the vessel are to make their own insurance on freight or profits, and are to have no interest in the insurance effected on the part of the cargo provided by the said Putnam. Capt. Brown is to be allowed a commission of one and a half per cent. for his services in attending to the purchase of the cargo, to be charged as part of the cost of the same, and whatever return commissions he may obtain shall be for the benefit of the shippers.

" The one fourth on freight and the one third on profits and one third on half profits, as above mentioned, are to be pur chased and shipped in one invoice, so that one part may have no advantage over the other as to the selection of the kind or quality of the goods ; and the profits and half profits shall be estimated on the result of the whole, whether composed of one article or more. The sale of the part of the cargo to be pro- vided by the said Putnam is to be left entirely to the judgment and direction of Alfred Barrow, Putnam & Co. to whom the whole cargo is to be consigned for sales, remittances, &c.

" It is further agreed that if the price, at which one third of each article composing the cargo could be sold when the cargo is landed, be sufficient, on an average, to cover cost and freight of four pounds ten shillings, with five per cent. primage, the said freight shall be considered as earned on the one third ' on freight if earned,' and forthwith remitted as may be desired ; but this does not apply to the one third on one half profits. The one twelfth provided by the owners may be in such goods as they may choose, and sold at such time as they may desire."

The case was submitted to the court on the following state ment of facts : " Brown, one of the plaintiffs was the master of the vessel, and Loring, the other plaintiff, was the managing owner. The vessel sailed from New York for Rio de Janeiro, where the master did not purchase an entire cargo on account of the parties, as provided in the agreement, but took goods for the house of John Gardner & Co. to the amount of about fifty-nine tons, at a stipulated freight of four pounds per ton, and then

put on board eleven tons for the plaintiffs, (being less than one twelfth of the cargo,) and two hundred and thirty-one tons for the defendants, being also less than their porportion ; the said two hundred and thirty-one tons having absorbed all the funds the defendants had provided, although they had funds enough, had the master assorted the cargo in different proportions.

" The master of the vessel had instructions from Loring, be fore she sailed from New York, to procure goods on freight to the consignment of the defendants, for any extent which the one twelfth of the owners would cost over their funds in Rio, if he could, at four pounds per ton, being less than the rate of freight agreed for with the defendants for the one fourth of the cargo, which they agreed to ship on specific freight ; and in the same letter of instructions, in which these orders were given, was this expression, ' I have no doubt that you will be able to obtain freight from the house which does the business of the vessel, even to a greater extent.'

" The defendants had no knowledge of these instructions having been given.

" Loring's orders to the master further stated, ' You are to receive a commission of one and a half per cent., in considera- tion of which, you are to employ such house of high standing as will serve the shippers best ; whatever return commission you may obtain, to be credited to the shippers.'

" Putnam's instructions to the master are silent on the subject of his procuring freight. They direct the purchase of the eleven twelfths of the cargo, which he had agreed to provide, and its shipment, ' for account of whom it may concern,' ' freight as per agreement,' subject to the order of the defendants, to whom the cargo is to be consigned for sales, &c.

" The defendants had assigned to a third party one fourth of their interest in the agreement and shipment, before the vessel arrived at Rio. This was without the knowledge of the plaintiffs. The master employed the house of John Gardner & Co., who made the purchase of the cargo, and were allowed the usual full commission, and in consideration of which, without re- turning any of said commission, which they would have done, in

lieu of making the shipment, had the master requested it, they, as above stated, made a shipment of fifty-nine tons on freight at four pounds per ton, ten shillings less than the rate agreed upon with the defendants for the one fourth of the cargo agreed to be shipped on specific freight, but one pound ten shillings higher than the current rate of freight at Rio.   This shipment, like the rest of the cargo, was consigned to the defendants' house at Antwerp.

   " There was a loss on the whole cargo, so that no freight was earned on the eight twelfths shipped on profit, and the amount of freight paid by Gardner & Co. would not make up said loss.   The defendants received the freight on the fifty-nine tons, shipped by John Gardner & Co., amounting to two hundred and thirty-eight pounds, two shillings and four pence, but decline to pay it over to the plaintiffs.

   " The master of the vessel made no settlement whatever of accounts with the house at Antwerp.   He left them to be settled between Loring and the defendants.   No accounts were received by Loring from Antwerp, for a long time, in consequence of the necessary delay in selling the cargo.   This claim was made immediately on their receipt, by which he was first informed of the omission to credit the freight on Gardner's shipment. The defendants had no opportunity to ratify or object to the doings of the master before the end of the voyage.

   " If the court are of opinion that the plaintiffs are entitled to recover, the defendants are to be defaulted, and judgment is to be entered against them for damages and costs, the amount to be ascertained by an assessor, if the parties do not agree ; otherwise, the plaintiffs are to be nonsuited, and the defendants are to recover their costs."

   *F. C. Loring,* for the plaintiffs.

   *Choate & Crowninshield,* for the defendants.

   SHAW, C. J.*   As this case formerly was presented to the court, it appeared to us that there was a breach of the contract on the part of the master, Brown, one of the plaintiffs, in not filling up the entire eleven twelfths of the cargo to be purchased

* *Putnam,* J. did not sit in this case.

on the part of the defendants. And although in the event that happened, it was fortunate for the defendants that it was not entirely filled up, yet if the plaintiff Brown, with whom the other plaintiff was connected, by a plain breach of the agreement, earned a profit to himself and his co-plaintiff, the defendants had a right to participate in the benefit of it. But as the matter now presents itself, it appears that the failure to comply with the agreement was on the part of the defendants, in not furnishing funds to fill up their proportion of the vessel. The master was to exercise his discretion in apportioning the plaintiffs' funds amongst the three articles of merchandise to be purchased, as he should think best ; and he had an obvious interest in purchasing those articles which promised to yield the best profit. If the defendants intended to rely on the fact that the master wilfully invested all their funds in the less bulky, instead of the more bulky articles, with a view to promote his own interest, to their detriment, that fact should have been distinctly averred and proved. But the master was left by the defendants to his judgment, knowing the relation in which he stood to the vessel and voyage ; and in the absence of proof, we are bound to presume that he exercised his judgment honestly.

But it is contended for the defendants, that taking the agreement and the instructions together, the master was bound so to apportion the funds amongst the articles more and those less bulky, as to fill the ship with the amount of funds furnished by the defendants. But we cannot so understand the agreement. That provided for taking a cargo of sugar, or coffee, or hides, or either one or two, or all these. And the defendants agreed to furnish eleven twelfths of a full cargo. Of course therefore they agreed to furnish funds enough to procure a cargo of either one or two, or an assorted cargo of the three articles ; and if they failed to do so, they failed to perform their part of the agreement.

It is argued on the part of the defendants, that the plaintiffs knew the amount of funds furnished by them, and made no objection that it was not sufficient to purchase their stipulated part of the cargo ; and that in fact it was sufficient, if the whole or

a greater part had been taken in the bulkier article of sugar, and less in the more costly article of coffee. But we perceive nothing of this in the agreement or statement of facts. It does not appear of what the defendants' funds consisted, what was the amount of them, or that the plaintiffs knew of the amount, or that the parties knew what would be the absolute or relative cost of the different articles, at the place of shipment. The duty of furnishing funds for the full amount, by letter of credit, bills of exchange, or otherwise, was upon the defendants, by the agreement.

It appears then by the facts, that after the plaintiffs had furnished their one twelfth of the cargo, the whole of the defendants' funds filled up two hundred and thirty-one tons only, leaving a capacity of forty-six tons unoccupied: That is, the plaintiffs furnished eleven tons, they took fifty-nine tons on freight, fourteen of which, added to their eleven, made twenty-five, which was their stipulated one twelfth of the cargo, or capacity of the vessel. They had a right, by the terms of the contract, to fill up their own one twelfth or twenty-five tons, either with their own goods, or goods on freight.

There remained forty-six tons of the capacity of the vessel, for which the master, by an arrangement with Messrs Gardner & Co. at Rio, took freight at four pounds per ton. This is the subject of the present action.

It is urged for the defendants, that they had a right to eleven twelfths of the capacity of the vessel, and of course that this freight is theirs. But we do not so understand the agreement. It is in no sense a charter-party, or letting of the vessel. It is true that they had a right to fill the vessel to this extent, with their own goods; and if they had offered to do so, or had furnished the master with funds for the purpose, and he, in breach of the agreement, had not so filled up their proportion, but reserved the room for earning freight, it would have presented a very different question. But the extent of the defendants' right, under the agreement, was thus to fill the vessel with their own goods. Having failed to do so, we think that the owners were remitted to their general right, as owners, to take goods for other ship-

pers, and receive the freight, which is compensation for the carriage of goods, to their own account.   Independently of stipulation, the earnings of a vessel belong to the owners.   Supposing, through the failure of a letter of credit, or otherwise, the funds of the defendants had wholly failed, the plaintiffs might have had a cause of action for breach of the agreement.   In addition to this, they would have had a right to employ their vessel in freighting goods to Antwerp or elsewhere, and it could hardly be pretended that the defendants could claim any participation in the freight thus earned.

It is no doubt better for all parties, in the event that has occurred, that of an unproductive and unprofitable adventure, that the whole vessel was not filled up by the defendants.   There would have been a greater loss on their part, by having a larger amount of merchandise at risk, on which there was a loss instead of a profit ; and the owners would have lost in the same proportion, because their freight was to depend mainly on the profits.

Who then shall profit by this fortunate accident, by which the loss of all parties was diminished, and some advantage obtained ? We think it is the owners, who, by having a vessel not wholly filled, were enabled to save something for themselves.   It is no answer to this, we think, to say that if the agreement had been fulfilled, the owners would have received no more than they would now receive, if the defendants were allowed to detain this freight to themselves.   It may be said with much more force, on the other side, that if the defendants had fulfilled their agreement, they would have been no better off than they will be now, after accounting for this freight to the owners ; and to allow them to retain it would be to allow them to profit by their own breach of contract.   But the true ground we think is, that the plaintiffs' vessel earned the freight, after the defendants had failed to avail themselves of the right to fill her up on the terms of the agreement ; and that they are entitled to the freight as owners.   But as to the amount of freight obtained, it is conceded to be greater than the current rate of freight, and was allowed by Gardner & Co. at such high rate, instead of a return commission, which they would have allowed, and which would have enured, by the

agreement, to the benefit of the defendants ; to the extent of this return commission the defendants have a right to retain — the amount having been in fact obtained by the plaintiffs in the name of freight, as a substitute for such return commission. We are of opinion that the plaintiffs are entitled to recover this freight, with a deduction of such return commission, and that the damages are to be settled on this basis.